UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TERRICK FICKLIN,

                              Plaintiff,

          v.

DOUGLAS RUSINKO
and CARL JASON,

                              Defendants.
_____

**DECISION AND ORDER**

6:18-CV-06310 EAW

## <u>INTRODUCTION</u>

Plaintiff Terrick Ficklin ("Plaintiff") commenced this action against Parole Officers Douglas Rusinko ("P.O. Rusinko"), Carl Jason ("P.O. Jason"), and Kathryn VanDusen ("P.O. VanDusen"), asserting several claims. (Dkt. 1 at 7-17). By Decision and Order dated January 8, 2019, the Court granted in part and denied in part the defendants' Motion to Dismiss, and dismissed P.O. VanDusen from the action. (Dkt. 8). Plaintiff's remaining claims are § 1983 claims for abuse of process and a Fourth Amendment violation in connection with Plaintiff's body cavity search, against defendants P.O. Rusinko and P.O. Jason (collectively "Defendants").

Presently before the Court are the parties' motions for summary judgment. (Dkt. 17 (Defendants' motion); Dkt. 19 (Plaintiff's motion)). For the reasons that follow, Defendants' motion is granted with respect to the abuse of process claim, but the motions are otherwise denied.

## STATE OF THE RECORD BEFORE THE COURT

The Court notes at the outset that the submissions of the parties are far from robust. Defendants filed their motion for summary judgment on January 30, 2020, in accordance with the Court's scheduling order (Dkt. 15), and supported that motion by a four-page statement of undisputed facts (Dkt. 17-1) with citations to Plaintiff's deposition transcript[1] that is attached as an exhibit (Dkt. 17-2) and to deposition exhibits that are not included in the record (*see*, *e.g.*, Dkt. 17-1 at ¶¶ 1, 2, 8). *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . .").

The Court issued a Text Order the same day Defendants filed their motion, setting February 27, 2020, as the deadline to submit a response to the summary judgment motion, and March 12, 2020, as the deadline for any reply.  (Dkt. 18).  After the deadline for submitting a response, Plaintiff filed his own separate motion for summary judgment,

---

[1]     Plaintiff states in his notice of motion in support of summary judgment that he also "moves to seal a portion of Defendants [sic] motion" (Dkt. 19 at 1), and then in the final paragraph of his Rule 56 statement he states:  "Move to seal pp. 20-32, 52, 60, 100-101, 133-134 (T17-35, 49, 57, 97-98, 130-131)" (Dkt. 19-1 at ¶ 22).  There is a presumption of public access to judicial documents and this presumption "can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006).  Plaintiff has wholly failed to meet this standard, offering no explanation or justification for his request to seal.  Moreover, it is not entirely clear to the Court which portions of his deposition transcript he is seeking to seal.  Accordingly, Plaintiff's motion to seal is denied without prejudice.

wherein instead of submitting "a response to each numbered paragraph" in Defendants' statement of undisputed facts as required by this Court's Local Rules, *see* L. R. Civ. P. 56(a)(2), Plaintiff submitted his own four-page statement of undisputed facts that also refers to deposition exhibits that are not part of the record before the Court (*see*, *e.g.*, Dkt. 19-1 at ¶¶ 1, 20).

Defendants never submitted a reply in support of their summary judgment motion nor an opposition to the separately filed (and untimely) motion filed by Plaintiff.[2] Specifically, this Court's Text Order set a deadline for reply papers in support of Defendants' summary judgment motion as March 12, 2020 (Dkt. 18), and this Court's Local Rules otherwise required a response within 28 days after service of Plaintiff's separately-filed summary judgment motion (*see* Loc. R. Civ. P. 7(b)(2)(A) (requiring responses to motions for summary judgment and cross-motions for summary judgment to be filed 28 days after service, in the absence of a Court order setting forth other deadlines)).

According to this Court's Local Rules: "Each numbered paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion

---

[2]     Plaintiff's motion is untimely because to the extent it was intended to be a response to Defendants' motion for summary judgment, it was submitted a day late (*see* Dkt. 18), and to the extent it was intended to represent a separately-filed motion for summary judgment, it was submitted 29 days late (*see* Dkt. 15 at ¶ 5 (requiring dispositive motions to be filed by January 30, 2020)).  Court deadlines should not be so cavalierly disregarded by counsel.  Nonetheless, because Defendants have not raised any objection to the late filing by Plaintiff, and because Defendants themselves never bothered to respond to Plaintiff's motion for summary judgement, the Court will exercise its discretion and consider the untimely filings.  However, counsel is forewarned that the Court may not be so inclined with respect to future untimely filings that disregard the Court's scheduling deadlines.

unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." L. R. Civ. P. 56(a)(2). Thus, arguably each party's Rule 56 statement should be deemed true if properly supported by the record evidence. Nonetheless, the Court has endeavored to compare the parties' Rule 56 statements to glean which facts, based upon the statements in both, are truly undisputed.

## FACTUAL BACKGROUND

At all times relevant to this action, Plaintiff was a parolee in the custody of New York State Parole. (Dkt. 17-1 at ¶ 1; Dkt. 19-1 at ¶ 1). According to Plaintiff, at some point prior to April 22, 2015, P.O. Jason asked Plaintiff whether he knew an individual who went by the street name "Green Eyes." (Dkt. 17-2 at 52). On the evening of April 21, 2015, Plaintiff witnessed the murder of "[his] man," Moe, on Pardee Street. (*Id*. at 62). According to Plaintiff, on the morning of April 22, 2015, P.O Rusinko called regarding the murder and requested that Plaintiff come to the parole office. (*Id.* at 63).

Plaintiff's girlfriend picked him up to take him to the parole office, and the two stopped at the Brooklyn Express Convenience store on North Clinton Avenue in Rochester, New York. (Dkt. 17-1 at ¶ 4; Dkt. 17-2 at 65; Dkt. 19-1 at ¶ 2). After exiting the store, Plaintiff received a call from P.O. Jason who asked, "where Green Eyes at." (Dkt. 17-2 at 68). Plaintiff did not answer the question and hung up the phone. (*Id.*). Plaintiff then entered the driver's seat of his girlfriend's vehicle. (Dkt. 17-1 at ¶ 5; Dkt. 17-2 at 66). P.O. Rusinko drove by and observed Plaintiff seated in the driver's seat (Dkt. 17-1 at ¶ 6), and arrested Plaintiff for violating a condition of his parole restricting his ability to drive (Dkt. 17-1 at ¶ 7; Dkt. 19-1 at ¶ 5).

After arresting Plaintiff, Defendants transported him by car to the parole office. (Dkt. 17-1 at ¶ 10; Dkt. 19-1 at ¶¶ 6-7).  During the car ride, Plaintiff told Defendants that he needed to use the bathroom.  (Dkt. 17-1 at ¶ 10).  After arriving at the parole office, Defendants escorted Plaintiff to the bathroom.  (Dkt. 17-1 at ¶ 11; Dkt. 19-1 at ¶ 7). Plaintiff claims that Defendants then slammed him to the floor, pulled his pants down, and that P.O. Rusinko stated that a confidential informant had indicated Plaintiff had drugs in his rectum.  (Dkt. 17-1 at ¶¶ 14-16; Dkt. 19-1 at ¶ 7).  P.O. Rusinko put on a glove and stuck his fingers in Plaintiff's rectum but did not find any drugs.  (Dkt. 17-1 at ¶ 17; Dkt. 19-1 at ¶¶ 9-11).  According to Plaintiff, Defendants implied that the search was done because he would not provide information about Green Eyes.  (Dkt. 19-1 at ¶ 15 ("Rusinko told Jason watch him.  He said, yo, everything going to be all right.  I am going to try and get you an ankle bracelet . . . you could have just given up[].  We could have worked this out.  It wouldn't have been like this.")).

As a result of the body cavity search, Plaintiff claims that he suffered intense pain, making it difficult for him to sit on a toilet.  (Dkt. 19-1 at ¶ 19).  Plaintiff also states that he lost his appetite, developed hemorrhoids, and bled while having a bowel movement. (*Id.*).  Plaintiff also testified that he suffered from depression, experienced flashbacks, and had difficulty sleeping as he "was fucked up in the head" and "traumatized."  (*Id.* at ¶ 20).

## DISCUSSION

### I.   Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

- 6 -

**II.**    **§ 1983 Fourth Amendment Claim**

   **A.**    **There are disputed issues of fact as to whether the body cavity search was reasonable under the circumstances.**

The Fourth Amendment recognizes the "right of the people to be secure in their persons . . . against unreasonable searches. . . ." U.S. Const. amend. IV. "Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests.'" *United States v. Massey*, 461 F.3d 177, 178 (2d Cir. 2006) (quoting *Samson v. California*, 547 U.S. 843, 848 (2006)). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (citations omitted).

"Courts must 'examin[e] the totality of the circumstances' surrounding the search, which includes Plaintiff's status as a parolee," *Rivera v. Madan*, No. 10 Civ. 4136 (PGG), 2013 WL 4860116, at *4 (S.D.N.Y. Sept. 12, 2013) (citations omitted), as parolees "have severely diminished expectations of privacy by virtue of their status alone," *Samson*, 547 U.S. at 852. *See also Massey*, 461 U.S. at 179 ("A parolee's reasonable expectations of privacy are less than those of ordinary citizens" (citations omitted)). "While parolees possess diminished Fourth Amendment protections, and the precise scope of the protections they retain is uncertain, a parolee still enjoys a level of Fourth Amendment protection that is greater than the *de minimis* Fourth Amendment protection that incarcerated inmates retain." *Rivera*, 2013 WL 4860116, at *5 (citing *Hope v. Goines*, No.

00 CV 3476(JG), 2002 WL 2003201, at *3 (E.D.N.Y. Aug. 8, 2002)) (internal quotation marks omitted).

Courts in this Circuit have traditionally applied the standard set forth in *People v. Huntley*, 43 N.Y.2d 175 (1977), to assess whether a search of a parolee was unreasonable and thus unconstitutional. The *Huntley* standard looks at "whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *United States v. Grimes*, 225 F.3d 254, 258-59 (2d Cir. 2000) (quoting *Huntley*, 43 N.Y.2d at 181). The Second Circuit has held that the *Huntley* standard is "coextensive with the requirements of the Fourth Amendment." *Id.* at 259 n.4 ("A rule indicating that a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties is identical to a rule that parole officers may conduct searches so long as they comport with the Fourth Amendment."). "Accordingly, where a parolee challenges a parole officer's search as violative of the Fourth Amendment, 'the central issue is whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty.'" *Rivera*, 2013 WL 4860116, at *5 (quoting *United States v. Barner*, 666 F.3d 79, 85 (2d Cir. 2012)).

However, since the Supreme Court's decision in *Samson v. California*, it is an open question whether *Samson* supplants prior cases in which the reasonableness of a search of a parolee was assessed under the *Huntley* standard. In *Samson*, the Supreme Court held that a "suspicionless" search of a parolee did not violate the Fourth Amendment where the parolee had consented to being searched "at any time of the day or night, with or without a search warrant and with or without cause" as a condition of parole. 547 U.S. at 846. The

- 8 -

Supreme Court reasoned that the California statute's "clear and unambiguous search condition" "significantly diminished [the parolee's] reasonable expectation of privacy." *Id.* at 852.

Examining *Samson*, the Second Circuit has held that a parolee's consent to be searched under the New York statute is "narrower than" and "factually distinct from" a parolee's consent to be searched under the California statute at issue in *Samson*, because the New York statute "[does] not explicitly authorize 'anytime, anywhere' searches and as New York law requires searches be 'rationally and substantially related' to the performance of the parole officer's duty." *United States v. Watts*, 301 F. App'x 39, 42 n.2 (2d Cir. 2008) (citing N.Y. Comp. Codes R. & Regs. Tit. 9, § 8003.2(d)). The Second Circuit has opined on several occasions that it is an open question whether *Samson* supplants past precedent applying the *Huntley* standard and has consistently declined to answer that question. *See Black v. Petitinato*, 761 F. App'x 18, 21 (2d Cir. 2019) ("We agree with the district court that the law is unclear whether the *Huntley* standard has been superseded by *Samson*. . . . We therefore conclude that there was no clearly settled law telling the parole officers that their [suspicionless] search of Black's residence violated the standards of the Fourth Amendment.") (citing *Barner*, 666 F.3d at 86 (declining to decide whether search could have been justified under *Samson* without applying the *Huntley* standard); *United States v. Viserto*, 391 F. App'x 932, 934 (2d Cir. 2010) (declining to decide whether "*Samson* supplants . . . past precedent assessing the reasonableness of a parole search by reference to its relationship to parole duties"); *Watts*, 301 F. App'x at 42 n.2 (declining to decide

whether *Samson* "supplants our prior cases in which we assessed the 'reasonableness' of a parole search under" the *Huntley* standard)).

Here, applying the *Huntley* standard, the Court easily finds that there are questions of fact as to whether the body cavity search was rationally and reasonably related to Defendants' performance of their duties as parole officers under the particular facts of this case. Notably, Plaintiff was arrested and brought to the parole office for violating a condition of parole in connection with driving, not possessing drugs. While being transported to the parole office, Plaintiff asked to use the bathroom. However, Defendants did not submit any evidence, nor do they argue, that they believed Plaintiff secreted drugs in his rectum based on Plaintiff's request to use the bathroom. Plaintiff testified that before he was searched, Defendants stated that a confidential informant told them that Plaintiff had drugs in his rectum. Although Defendants acknowledge this testimony (Dkt. 17-1 at ¶ 15), they have not submitted any evidence to demonstrate the search was in response to the information obtained from a confidential informant. On this limited record, the Court cannot conclude that the search was either objectively reasonable or unreasonable as a matter of law. *See Black v. Petitinato*, No. 16-cv-2320 (BMC) (RLM), 2018 WL 1115692, at *4 (E.D.N.Y. Feb. 27, 2018) (finding questions of fact where no evidence regarding "precisely what plaintiff did during [the parole officer's earlier visits to plaintiff's residence] and whether whatever it was amounted to reasonable suspicion for the later visit [to plaintiff's residence]," but granting summary judgment on basis of qualified immunity), *aff'd*, 761 F. App'x 18 (2d Cir. 2019); *Gerena v. Pezdek*, No. 9:13-CV-953 (DNH/ATB), 2015 WL 513145, at *4 (N.D.N.Y. Feb. 6, 2015) (denying summary judgment where

defendants submitted no evidence as to whether search of parolee's home was "rationally and substantially related" to the performance of parole officers' duties and instead made a "generalized comment" that search of parolee was "related to their supervision responsibilities, *i.e.*, to insure that plaintiff was adhering to the strict terms of his release").

In support of their request for summary judgment, Defendants cite *Rivera*, 2013 WL 4860116, at *4 to support their argument that the search was objectively reasonable as a matter of law.  (Dkt. 17-3 at 4-5).  However, *Rivera* actually demonstrates why there are issues of fact in the instant case.  Applying the *Huntley* standard, the *Rivera* court found that the search was objectively reasonable based on the following undisputed facts: the plaintiff consented to his person being searched as one of his parole conditions; the parole officer had specific information from the plaintiff's girlfriend that the plaintiff was carrying cocaine; plaintiff's girlfriend had told parole officers that the plaintiff planned to either swallow the drugs or insert them into his rectum to smuggle them into Rikers Island and that the plaintiff planned on swallowing a razor or inserting it in his rectum; the plaintiff was squirming in his seat while seated in the parole officer's office; and he admitted that a drug test would be positive.  *Id.* at *6.  Those facts are plainly distinguishable from the present case, where the record is devoid of any evidence supporting a suspicion that Plaintiff had secreted drugs in his rectum—other than the statement that Plaintiff attributes to P.O. Rusinko stating that a confidential informant had purportedly indicated that Plaintiff had drugs in his rectum.

Moreover, even under the broader standard endorsed by *Samson* which concluded that the Fourth Amendment did not prohibit a suspicionless search of a parolee, issues of

fact remain necessitating denial of summary judgment.  The Supreme Court made it clear that California's statute withstood constitutional scrutiny, in part, because it prohibited "arbitrary, capricious or harassing" searches.  547 U.S. at 856.  Here, the essence of Plaintiff's claim—about which the facts are disputed—is that Defendants conducted the body cavity search as a means of harassment and retribution because Plaintiff refused to provide information about "Green Eyes."  If the body cavity search was conducted as retribution for Plaintiff's refusal to provide information to Defendants, then a reasonable jury could find that the search was unreasonable even under the more generous standard set forth in *Samson*.

## B. <u>Defendants are not entitled to qualified immunity as a matter of law on Plaintiff's Fourth Amendment claim related to the body cavity search</u>.

Turning to Defendants' argument that they are entitled to qualified immunity even if disputed issues of fact exist with respect to the reasonableness of the search, the Court concludes on the present record that Defendants are not entitled to qualified immunity as a matter of law.  "The qualified-immunity doctrine shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'"  *McGowan v.*

*United States*, 825 F.3d 118, 124 (2d Cir. 2016) (quoting *Wood v. Moss*, 572 U.S. 744, 759 (2014)).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (citation and quotations omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citation and quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

As discussed above, the Second Circuit has expressly declined to answer the question of whether *Samson* supplants the Circuit's prior cases requiring application of the *Huntley* standard in assessing the lawfulness of a search of a parolee. *See Petitinato*, 761 F. App'x at 21; *Barner*, 666 F.3d at 86; *Viserto*, 391 F. App'x at 934; *Watts*, 301 F. App'x at 42 n.2. Thus, if the issue before the Court was simply whether Defendants were entitled to qualified immunity because they conducted a search of a parolee without suspicion, the Court might be compelled to find in favor of Defendants. *See Petitinato*, 761 F. App'x at 21 (affirming grant of summary judgment in favor of parole officer defendants on the basis of qualified immunity because "the law is unclear whether the *Huntley* standard has been superseded by *Samson*"); *Foster v. McCabe*, No. 1:19-cv-843, 2020 WL 2840060, at *5

(W.D.N.Y. June 1, 2020) (dismissing claim on basis of qualified immunity "[s]ince Mr. Foster was a parolee and the law is unsettled as to whether *Samson* superseded the *Huntley* standard, no clearly established law told the officers that they could not search the residence").

However, Plaintiff complains about far more than a search being conducted without reasonable suspicion.  Plaintiff contends that the search was conducted in a harassing, demeaning, and intrusive manner as retribution for his refusal to provide information to Defendants about Green Eyes.  As noted above, even under *Samson*, the Supreme Court recognized that suspicionless searches may not be conducted for reasons that are arbitrary, capricious, or harassing.  547 U.S. at 856.  Moreover, the alleged search conducted here was not a pat down search of Plaintiff's person or search of his residence, but rather a highly intrusive manual body cavity search implicating significant privacy interests.  *See Sloley v. VanBramer*, 945 F.3d 30, 38 (2d Cir. 2019) (reversing grant of summary judgment in § 1983 claim involving visual body cavity strip search incident to felony arrest, noting that these searches are "invasive and degrading" and "even more intrusive" than strip searches); *cf. Foster v. McCabe*, 2020 WL 2840060, at *5 (dismissing § 1983 unlawful-search claims based on qualified immunity where law was unsettled concerning warrantless search of apartment where parolee resided); *Reed v. Sheppard*, 321 F. Supp. 3d 429, 449 (W.D.N.Y. 2018), *appeal dismissed sub nom. Reed v. Cashman*, No. 18-2733, 2019 WL 4527680 (2d Cir. Feb. 26, 2019) (granting summary judgment on qualified immunity grounds where officers conducted warrantless search of what was believed to be parolee's residence, because even if reasonable suspicion was lacking, the "uncertainty in the

caselaw means that a reasonable parole officer conducting the search at issue here without reasonable suspicion would not necessarily have understood [his] actions to be unlawful"). In other words, a reasonable officer in Defendants' position would have known that it was unlawful to perform an invasive body cavity search for no legitimate purpose, but instead solely to retaliate against and humiliate Plaintiff. Indeed, it is well-established that such a search is unlawful even in the prison setting, where the Fourth Amendment's protections are less robust. *See Davila v. Messier*, No. 3:13-cv-81 (SRU), 2014 WL 4638854, at *6 (D. Conn. Sept. 17, 2014) ("[A] strip search or body cavity search that is unrelated to a legitimate penological purpose or is designed to intimidate, harass or punish the inmate violates the Fourth Amendment's proscription against unreasonable searches."); *Lashley v. Wakefield,* 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005) (explaining that inmates may not be subjected to "searches that lack any legitimate penological interest and are intended solely to harass").

Accordingly, based on the present record, the Court concludes that it would be error to grant summary judgment in favor of Defendants based upon qualified immunity. The Court finds Defendants' reliance upon *Torres v. City of New York*, No. 17 Civ. 6604 (GBD) (DCF), 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019) inapposite. In *Torres*, the record established that the body cavity search of the plaintiff inmate was conducted based on reasonable suspicion that arose from the plaintiff's movements upon entering his cell to conduct an initial search. *Id.* at *1. Here, by contrast, there are disputed issue of fact as to the existence of reasonable suspicion, and even if reasonable suspicion was not required in accordance with *Samson*, there are disputed issues of fact as to the nature and scope of the

search and the motivation for it, thus preventing the Court from concluding that the law addressing the search conducted by Defendants was unsettled at the time of the search so as to justify a finding of qualified immunity.

### C.   <u>Plaintiff's request to reinstate his Eighth Amendment claim is denied</u>.

Plaintiff's memorandum of law in support of his motion for summary judgment contains a paragraph arguing that his claim related to the body cavity search should be evaluated under the Eighth Amendment, because based on the New York Court of Appeals decision in *People v. Bratton*, 8 N.Y.3d 637 (2007), Defendants did not have the authority to arrest Plaintiff without a warrant.  (Dkt. 19-3 at 2).  Plaintiff's argument is not well developed, and moreover, to the extent that Plaintiff is seeking reconsideration of the Court's prior Decision and Order dated January 8, 2019, he has not properly supported any such motion in accordance with the standard set forth by the Second Circuit.  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] . . . is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.").

In any event, for the reasons set forth in the Court's prior Decision and Order, it "joins with the district court decisions in this Circuit that have concluded that a parolee's excessive force claims against his parole officers for conduct taking place during his period of parole are analyzed under the Fourth Amendment, not the Eighth Amendment." *Ficklin v. Rusinko*, 351 F. Supp. 3d 436, 455 (W.D.N.Y. 2019).  Whether Defendants were

- 16 -

authorized to arrest Plaintiff without a parole warrant does not change that analysis and conclusion.

## III.     § 1983 Abuse of Process Claim

"When a plaintiff asserts an abuse-of-process claim under Section 1983, '[the Second Circuit has] turn[ed] to state law to find the elements'—in this case, New York State law." *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 n.5 (2d Cir. 2015) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)); *see Savino v. City of New York*, 331 F.3d 63, 76-77 (2d Cir. 2003) (citing New York State decisional law in analyzing a § 1983 claim for abuse of process).

> Under New York law, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."

*Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) (quoting *Cook*, 41 F.3d at 80).  In evaluating the third prong, the Second Circuit has distinguished between an "improper motive" and an "improper purpose."  *See Savino*, 331 F.3d at 77 ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action. . . .  '[I]mproper motive is not enough.'" (quoting *Dean v. Kochendorfer*, 237 N.Y. 384, 390 (1924))); *see also Roeder v. Rogers*, 206 F. Supp. 2d 406, 414 (W.D.N.Y. 2002) (granting summary judgment on abuse of process claim where plaintiff's affidavit did not "describe any coercive overtures initiated by defendants *after* the filing of the notice of pendency" because the plaintiff's "allegation

that the notice was filed for the sole purpose of harassing her" showed malicious motive, not improper purpose (emphasis added)).

Defendants argue that Plaintiff's abuse of process claim should be dismissed because: (1) the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), which held that a § 1983 action seeking money damages is not cognizable if a decision in the plaintiff's favor would necessarily invalidate a criminal conviction; (2) the existence of probable cause for Plaintiff's arrest bars any abuse of process claim; and (3) there is insufficient evidence in the record to support the conclusion that Defendants acted with an improper purpose in arresting Plaintiff. (*See* Dkt. 17-3). For the reasons discussed below, the Court disagrees that the abuse of process claim is barred by *Heck* or the existence of probable cause, but finds that summary judgment is proper because no rational fact finder could find in favor of Plaintiff.

Defendants contend that "Plaintiff's claim that the parole officers' arrest was an unlawful abuse of process would contradict the parole violation convictions" and thus Plaintiff's claims are barred by *Heck*. (*Id.* at 11). The record appears undisputed that Plaintiff pleaded guilty to operating a motor vehicle on April 22, 2015, in violation of his parole conditions (Dkt. 17-1 at ¶ 8; Dkt. 19-1 at ¶ 16), and that he also pleaded guilty to using cocaine before that date in violation of his parole conditions (Dkt. 17-2 at 69). However, Plaintiff's abuse of process claim does not undermine the factual premise of either conviction. (*See* Dkt. 19-3 at 1-2). Instead, Plaintiff argues that the arrest was a part of a "continuing effort to threaten, intimidate, coerce, and extort Plaintiff into giving [Defendants] information on an unrelated parolee." (*Id.*). A finding in favor of Plaintiff

as to his abuse of process claim would not necessarily undermine the validity of Plaintiff's parole violation convictions, because it is possible both that Plaintiff violated his parole and that Defendants would not have arrested him for those violations absent additional motivation.  In other words, Plaintiff's convictions for driving and using cocaine do "not necessarily dispel the possibility that [Plaintiff] was the victim of unconstitutional abuse of process in the events leading up to the conviction[s]."  *Hadid v. City of New York*, 730 F. App'x 68, 71 (2d Cir. 2018) (finding abuse of process claim not barred by *Heck* as the claim was not inconsistent with the plaintiff's perjury conviction).

Defendants also argue that Plaintiff's guilty pleas bar his abuse of process claim because "[a] guilty plea establishes probable cause for the arrest as a matter of law."  (Dkt. 17-3 at 10).  Some courts in this Circuit have concluded that "probable cause—a type of legal justification—is a defense to a malicious abuse of process claim."  *Rao v. City of New York*, No. 14-CV-7422 (RRM) (LB), 2018 WL 1582289, at *9 (E.D.N.Y. Mar. 29, 2018) (collecting cases).  Others have found that probable cause is not a complete defense to an abuse of process claim. *See id.* (collecting cases); *VanZandt v. Fish & Wildlife Serv.*, 524 F. Supp. 2d 239, 247 (W.D.N.Y. 2007) ("[P]rocess properly issued on probable cause can nonetheless be abused."); *see also Allen v. Leonard*, No. CV 18-7163 (SJF) (AKT), 2020 WL 4587752, at *8 n.8 (E.D.N.Y. Mar. 3, 2020) (noting that there is a "split within this Circuit as to whether probable cause is a complete defense to malicious abuse of process"), *report and recommendation adopted*, 2020 WL 2537280 (E.D.N.Y. May 19, 2020).  The Second Circuit has declined to weigh in on the issue as recently as 2015, *see Mangino*, 808 F.3d at 959, but noted in *Tuccillo v. Cnty. of Nassau*, 723 F. App'x 81 (2d Cir. 2018), that

after its decision in *Mangino*, "New York state courts have subsequently held that probable cause will defeat an abuse of process claim under at least some circumstances," *id*. at 82.

Defendants fail to address this split of authority at all in their papers, and thus have failed to demonstrate their entitlement to summary judgment on this basis. In particular, Defendants have failed to address why or how the circumstances of this case are such that the Court should conclude the existence of probable cause bars Plaintiff's abuse of process claim. On the record before it, the Court cannot grant summary judgment to Defendants due to the existence of probable cause.

However, the Court is persuaded that Plaintiff cannot, on the instant record, demonstrate that Defendants acted with an improper purpose so as to support an abuse process claim. The essence of Plaintiff's claim is that his arrest was a part of a "continuing effort to threaten, intimidate, coerce and extort Plaintiff into giving [Defendants] information on an unrelated parolee." (Dkt. 19-3 at 2). In its prior Decision and Order dated January 8, 2019, the Court permitted Plaintiff's abuse of process claim to proceed on this theory at the motion to dismiss stage, noting that it was "admittedly a close call." (Dkt. 8 at 21). However, at the summary judgment stage, Plaintiff has failed to come forward with any evidence that would allow a reasonable jury to adopt his theory that Defendants arrested Plaintiff in order to force him to provide information regarding Green Eyes. The sole evidence in the record related to this assertion is Plaintiff's testimony that after the arrest and body cavity search, "Rusinko . . . said, yo, everything going to be all right. I am going to try and get you an ankle bracelet . . . you could have just given up[]. We could have worked this out. It wouldn't have been like this." (Dkt. 17-2 at 99). This testimony,

on its face, does not support the conclusion that Defendants were still seeking information about Green Eyes—to the contrary, the statements that "we could have worked this out" and that "[i]t wouldn't have been like this" had Plaintiff "just given up" indicate that the window for cooperation had closed. Notably, Plaintiff did not testify (or come forward with any other evidence) that Defendants attempted to force him to provide information regarding Green Eyes during the course of the arrest and body cavity search, or that Defendants subsequently attempted to leverage Plaintiff's arrest in exchange for such information.

At most, the record before the Court supports the conclusion that Plaintiff's arrest and the subsequent body cavity search were undertaken for the purpose of punishing Plaintiff for his previous failure to cooperate. As such, Plaintiff has failed to demonstrate that Defendants arrested him to obtain a collateral objective beyond the arrest. *See Arrington v. City of New York*, 628 F. App'x 46, 49-50 (2d Cir. 2015) (allegation that defendant commenced prosecution to punish the plaintiff for exercising his right to bear arms is an allegation of retaliatory motive, not collateral objective); *Coleman v. City of New York*, 585 F. App'x 787, 788 (2d Cir. 2014) (affirming grant of summary judgment on abuse of process claim where the plaintiff claimed that the defendant police officers had arrested him in order to punish him because "retaliation for some offense will not suffice as a collateral motive for the purposes of an abuse of process claim"); *Savino*, 331 F.3d at 77-78 (affirming grant of summary judgment where the plaintiff alleged that "in instigating the criminal investigation that led to his indictment, defendants were retaliating against him for the embarrassment caused by the media reports of his allegedly exorbitant overtime

pay" because even if "defendants acted with an improper *motive,*" the plaintiff had presented no evidence that Defendants "had an *ulterior purpose* or *objective* in facilitating his prosecution"); *Aouatif v. City of New York*, No. 07-CV-1302 RRMJO, 2019 WL 2410450, at *12 (E.D.N.Y. May 31, 2019) (granting summary judgment on abuse of process claim where the plaintiff claimed her psychiatrist had maliciously caused her to be involuntarily committed in retaliation for her having accused him of misconduct because "a retaliatory motive cannot sustain an abuse of process claim"), *aff'd*, 811 F. App'x 711 (2d Cir. 2020).  No reasonable jury could find for Plaintiff on his abuse of process claim, and Defendants are entitled to summary judgment thereon.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 17) is granted as to Plaintiff's abuse of process claim and otherwise denied.  Plaintiff's motion for summary judgment (Dkt. 19) is denied in its entirety.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:         September 14, 2020
               Rochester, New York